UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KIRSTIN JACKSON on behalf of herself
and all others similarly situated,

                                **Plaintiff,**

                   -against-                                        MEMORANDUM
                                                                AND ORDER
IMMEDIATE CREDIT RECOVERY, INC.,                CV-05-5697 (SMG)

                                **Defendant.**
------------------------------------------------------------X
GOLD, S., U.S.M.J.:

## INTRODUCTION

      The plaintiff, Kirstin Jackson, brings this putative class action against defendant, Immediate Credit Recovery, Inc., for violations of the Fair Debt Collection Practices Act (FDCPA). After consenting to my presiding over the case for all purposes, the parties made cross-motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons set forth below, I grant defendant's motion in part and dismiss two of the claimed violations set forth in plaintiff's complaint. I deny plaintiff's motion for judgment on the pleadings in all respects.

## BACKGROUND

      The facts of this case are very simple and not in dispute. Manhattan Community College referred the plaintiff's allegedly delinquent account in the amount of $1900.00 to defendant for collection. Def.'s Mem. Supp. Mot. at 4. On June 24, 2005, the defendant sent a notice ("June Notice") to the plaintiff that stated:

1

> COLLECTION AGENCY NOTICE
>
> Please be advised that the above mentioned account has been assigned to our PROFESSIONAL COLLECTION AGENCY for collection.
>
> If you do not dispute the validity of this debt, and to prevent further collection activity from being taken, you must make payment in full directly to IMMEDIATE CREDIT RECOVERY, INC. Please make the check payable to our client and use the enclosed envelope with the New York address.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.
>
> **See Reverse Side For Important Information**

Comp. at 6.

The reverse side of the June 24, 2005 notice contained information directed specifically to residents of various states. Comp. at 7. Each paragraph began, in bold-faced print, with a restrictive heading, as follows: "For California Residents," "For Colorado State Residents Only," "Notice to Tennessee Consumers," "Notice to Texas Consumers," "Texas Residents," "Massachusetts Residents." *Id.* The Colorado section stated:

> **For Colorado State Residents Only**: Unless you, the consumer, within 30 days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed valid. If you, the consumer, notify us in writing within the 30 day period that the debt or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a Judgment against you, the consumer, and a copy of such verification or Judgment will be mailed to you by our office. Upon your written request, within the 30 day period, we will provide you with the name

and address of the original creditor, if different from the current creditor. If you notify our office, in writing, to cease contact by telephone at either your residence or your place of employment, no further such contact shall be made. If you notify our office, in writing, that you refuse to pay the debt or wish our office to cease further communication, we will not communicate further with you except:

a.) To advise you further efforts are being terminated;
b.) To notify you that we may invoke specified remedies which are ordinarily invoked or to notify you that our agency may invoke a specific remedy permitted by law.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.AGO.STATE.CO.US/CAB.HTM

*Id.*

Plaintiff received the letter and did not take action. Def.'s Mem. Supp. Mot. at 4. On July 25, 2005, the defendant sent the plaintiff another notice ("July Notice"), which stated:

**URGENT COLLECTION AGENCY NOTIFICATION**

We at Immediate Credit Recovery, Inc. did not receive notification from you disputing the above account within the thirty (30) days allowed as your right under the Fair Debt Collection Practices Act nor did we receive payment in full on the above account. If this account is not paid in full your account will appear as a bad debt on our credit files. Good credit is one of your most valuable assets. This account MUST BE PAID IN FULL NOW!

Mail your payment today directly to Immediate Credit Recovery, Inc. in the enclosed envelope to our New York location.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

**See Reverse Side for Important Information**

***To view your account and/or make a payment on-line please visit our web site at pay.icrcollect.com.***

Comp. at 8.

In her complaint, plaintiff alleges that the "For Colorado State Residents Only" section of the June Notice is misleading because it causes consumers to believe that only Colorado State residents have certain rights, which in fact consumers of all 50 states are afforded by the FDCPA. Comp., ¶¶ 1.6-1.8. Plaintiff also alleges that the July Notice, by virtue of when it was mailed and because it threatens that non-payment will adversely affect plaintiff's credit rating, (1) makes "false threats" and (2) "contradicts the plaintiff's right to dispute the debt." Comp., ¶¶ 1.11-14. Plaintiff states in her complaint that she will seek to certify a class of all persons in the State of New York who received a letter in "substantially the same form" as that sent to the plaintiff from the defendant. Comp., ¶ 1.16.

The parties have now filed cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and have asked that their motions be decided by the court based on the papers submitted without oral argument. For the reasons set forth below, the defendant's motion for judgment on the pleadings is granted with respect to plaintiff's claims that the "Colorado Resident" language is misleading and that the date of mailing of the July Notice contradicts and overshadows the validation language in the June Notice. Plaintiff's motion for judgment on the pleadings is denied in all respects.

## DISCUSSION

### *i.) Standard of Review*

The parties' motions are brought pursuant to Fed. R. Civ. P. 12(c), which allows the court to determine, based on the pleadings alone, whether judgment is appropriately entered as a matter of law. *Burns Int'l Sec. Servs. V. Int'l Union, UPGWA*, 47 F.3d 14, 16 (2d Cir. 1995). The pleadings include any attached exhibits and any documents incorporated by reference. *Cue*

4

*Fashions, Inc. v. LJS Distrib., Inc.*, 807 F. Supp. 334, 335 (S.D.N.Y. 1992). A court reviewing a 12(c) motion may, at its discretion, consider matters outside the pleadings, but must then treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(c).

When deciding a Rule 12(c) motion, the court must "apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004), *citing Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). "A complaint will only be dismissed if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002), *citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

### ii.) "Colorado State Residents Only" Language

The FDCPA forbids debt collectors from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (2006). Section 1692e also contains a "non-exhaustive" list of deceptive practices. *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). Plaintiff does not allege that defendant employed any of the statute's enumerated deceptive practices, but rather that the June Notice ran afoul of the statute's general prohibition against "false, deceptive, or misleading" representations or means. More specifically, plaintiff asserts that the June Notice is misleading because, under the heading "For Colorado Residents Only," it states that a consumer has the right to ask that the debt collector stop attempting to contact her. This statement was misleading, argues plaintiff, because the right to ask a debt collector to cease contact is afforded under federal as well as Colorado law. *See* 15 U.S.C. § 1692c(c). The federal law, however, does not require a

5

collection notice to advise consumers of that right. *Cf.* 15 U.S.C. § 1692g(a) (setting forth the information required to be set forth in a collection notice). Plaintiff contends that setting forth the right under a heading addressed only to Colorado residents would suggest to residents of other states that they do not have the same right, even though they do.

Whether the representations in a collection notice are deceptive must be evaluated from the perspective of the "least sophisticated consumer." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996); *Clomon*, 988 F.2d at 1318. The least sophisticated consumer is deceived in violation of Section 1692e if a collection notice is "open to more than one *reasonable* interpretation, at least one of which is inaccurate." *Clomon*, 988 F.2d at 1319 (emphasis added). At the same time, the standard protects debtors from "unreasonable misinterpretations of collection notices." *Id.* The Second Circuit has stated that the

> FDCPA 'does not extend to every bizarre or idiosyncratic interpretation' of a collection notice but 'does reach a reasonable interpretation of a notice by even the least sophisticated' consumer.

*Id.* at 1319, *quoting Rosa v. Gaynor*, 784 F. Supp. 1, 3 (D. Conn. 1989). Moreover, even the least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Greco*, 412 F.3d at 363.

Collection notices that, like the one here, contain state-specific provisions setting forth rights available under state law, have been considered by a number of courts. As discussed below, their reception has been mixed. The weight of authority, however, supports the conclusion that state-specific notifications are not so confusing as to violate the FDCPA.

6

In *Brown v. ACB Bus. Servs., Inc.*, 1996 WL 469588 (S.D.N.Y. Aug. 16, 1996), the debt collection letter at issue set forth state-specific notifications of consumer rights after a preface advising that "the following additional notices apply to persons residing in the following states." The court acknowledged that the notice might be somewhat confusing, and even suggested "better" introductory language, such as: "We are required under state law to notify consumers of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law." *Id.* at *3, n.1. However, the court still dismissed a claim brought pursuant to Section 1692e. It reasoned that to find a violation based upon the inference that notifications required pursuant to state law implied that similar rights were not provided under the FDCPA "would in effect write a notification requirement [for 1692c(c)] into the FDCPA." *Id.* at *3.

The Seventh Circuit has also, and more firmly, rejected a Section 1692e claim that a state-specific notice could lead to impermissible confusion. *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000).[1] The notice at issue in *White* introduced the advice of rights required by Colorado law with the statement that "[t]he State of Colorado requires that we furnish Colorado residents with the following information." *Id*. The notice did not clarify, as suggested in *Brown*, that the rights set forth in the notice did not constitute a complete list of rights afforded by federal

---

[1] *White* resolved a line of prior cases disagreeing over the deceptiveness of the "Colorado Resident" language. *See Dittloff v. Transworld Sys.*, Inc., 58 F. Supp. 2d 1006, 1010-12 (W.D. Wis. 1999) (holding that the language violated 1692e because it did not contain an explanatory preface); *Withers v. Equifax Risk Mgmt. Serv.*, 40 F. Supp. 2d 978, 983 (N.D. Ill. 1999) (holding language violated 1692e); *Farley v. Diversified Collection Servs., Inc.*, 1999 WL 965496 at *7-8 (N.D. Ill. Sept. 30, 1999) (same); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1139 (N.D. Ill. 1998) (same); *White v. Goodman*, 41 F. Supp. 2d 794, 798 (N.D. Ill. 1998) (finding the Colorado language not misleading).

or state law. *Id.* Nevertheless, the Circuit Court described the suggestion that a non-resident debtor might read the portion of the collection letter directed to Colorado residents and conclude that, as a non-resident, she did not have the rights described there, as "fantastic conjecture." *Id*. The court explained that unsophisticated recipients of dunning letters generally lack "any idea of what specific state or federal rights they have; so they have no benchmark against which to compare the rights that Colorado law confers." *Id.* The court concluded that, "[r]ealistically, the only reaction of a Colorado nonresident to the paragraph would be that it had nothing to do with him," and affirmed the district court's dismissal of the claim. *Id*.

Finally, in *Morse v. Dun & Bradstreet, Inc.*, 87 F. Supp. 2d 901, 903 (D. Minn. 2000), the court considered a collection letter that provided state-specific notifications in chart form under the heading, "Note the following which apply in the specified states." *Id.* at 902. The court rejected plaintiff's contention that this notice would confuse the least sophisticated consumer, reasoning as follows:

> [I]n order for a non-Colorado consumer to reach this conclusion [that she is not entitled to the rights set forth in the Colorado box], she would have to: (1) read the back page of the letter from top to bottom (a significant proposition for sophisticated and unsophisticated consumers alike), (2) carefully review notices that are clearly labeled as applicable to residents of states other than her own, (3) infer that what applies in Colorado does not apply in her own state, (4) conclude that she cannot possibly have such rights under any other laws.

Id. at 903. The court went on to conclude that "this improbable sequence . . . exceeds the level of reasonableness imposed by the least sophisticated consumer standard and constitutes the sort of idiosyncratic interpretation that the standard is designed to guard against." *Id.* at 903-04. *But see, Scott v. Enhanced Recovery,* 2006 WL 1517755, at *4 (E.D.N.Y. May 31, 2006) (denying, essentially without discussion, a motion to dismiss a claim based upon state-specific

notifications).

The reasoning in *Brown*, *White,* and *Morse* applies here. It seems unlikely that an unsophisticated consumer would bother to read technical language addressed to residents of another state. It would be even more unusual for that unsophisticated consumer to parse the language of the notice provided for Colorado residents as an attorney would, and infer that rights specifically disclosed only to residents of Colorado must be rights that others do not have. Moreover, because the FDCPA does not require debt collection notices to disclose the right provided by Section 1692c(c) – to request that contact cease – unsophisticated consumers are left unaware that they have this right whether they receive a notice with "Colorado" language or not. Thus, a debt collection notice is not necessarily any more misleading with the "Colorado Resident" language than it is without it. Under these circumstances, dismissal comports with case law that counsels courts to avoid "closely parsing a debt collection letter like a municipal bond offering" and points them instead "towards a *common sense* appraisal of the letter." *Jacobson v. Healthcare Fin. Servs., Inc.,* 434 F. Supp. 2d 133, 138 (E.D.N.Y. 2006) (emphasis added).

For all these reasons, defendant's motion for judgment on the pleadings is granted with respect to plaintiff's 1692e claim that the "Colorado Resident" language is deceptive.

*iii.) Threatening Action Not Intended to be Taken*

Section 1692e(5) prohibits a debtor from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Section 1692(10) states that a debtor may not use "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Plaintiff contends that these sections are violated

9

by the statements in the July Notice that "[i]f this account is not paid in full your account will appear as a bad debt on our credit files. Good credit is one of your most valuable assets. This account MUST BE PAID IN FULL NOW." According to plaintiff, defendant never intended to report plaintiff's failure to pay her debt to any credit reporting agencies, and the July Notice therefore includes a threat to take an action that was "not intended to be taken." Pl.'s Resp. at 7. Defendant responds that it does have procedures in place for reporting delinquent accounts to a credit reporting agency. Def.'s Mem. in Reply at 4.

To establish a violation of sections 1692e(5) and (10), a plaintiff must demonstrate that "the least sophisticated consumer could reasonably misinterpret the challenged language or interpret the language to mean that defendant was going to initiate action which it never actually intended, or was not legally sanctioned, to take." *Berger v. Suburban Credit Corp.,* 2006 WL 2570915, at *4 (E.D.N.Y. Sept. 5, 2006). Factors courts consider include whether the threat is made by the debt collector itself or "merely suggests that the debt collector's client may consider legal action in the event of nonpayment;" whether the letter specifically states legal action will be taken or merely describes available alternatives including possible legal action; whether the debt collector is authorized by its client to take legal action; and whether the debt collector likely intended to, and was capable of, carrying out its threatened action. *Berger*, 2006 WL 2570915, at *4-6 (holding that threatening to take "whatever steps necessary" to collect a debt violated § 1692e(5), when in fact debt collector had no intention, and no authority from its client, to institute legal action). *See also, Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 63 (2d Cir. 1993) (holding that notice indicating, among other things, that the debt collector might decide to take legal action, when the creditor had not authorized it to do so, violated Section 1692e(5));

*Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25-26 (2d Cir. 1989) (holding that a collection notice stating that "this item has already been referred for collection action," and advising the debtor to "pay this amount now if action is to be stopped," when in fact no legal action had been brought, violated Section 1692e(5)); *Spira v. Ashwood Fin., Inc.,* 358 F. Supp. 2d 150, 160-62 (E.D.N.Y. 2005) (holding that a debt collector's statement that it would pursue a debt through "every means available" did not violate the FDCPA where the debt collector had in fact not decided on a course of action and had several alternative collection methods available); *Madonna v. Acad. Collection Servs.*, 1997 WL 530101, at *6-9 (D. Conn. Aug. 12, 1997) (finding statement that creditor "may" choose to pursue legal means was not a violation where debt collector did not know of client's specific plans, but client had brought many collection suits in the past); *Knowles v. Credit Bureau of Rochester,* 1992 WL 131107, at *1-3 (W.D.N.Y. 1992) (holding that warning a debtor that failure to pay would force the creditor to "consider" legal action was not a violation because the statement did not threaten any specific action by defendant).

Here, the statement in the July notice that, absent payment, plaintiff's obligation would appear "as bad debt" on the defendant's credit files, coupled with the warning that "[g]ood credit is one of your most valuable assets," might reasonably be interpreted by an unsophisticated consumer to mean that a failure to pay immediately would adversely affect her credit rating. Thus, whether the July Notice violates Sections 1692e(5) and (10) depends on whether, at the time the Notice was sent, defendant had the authority to make a report that would in fact impair plaintiff's credit and intended to do so.

Plaintiff contends that defendant took no adverse action with respect to plaintiff's credit

rating, and presumably had no intention of doing so when it sent the July Notice. Pl.'s Resp. at 7. The only evidence plaintiff points to in support of this assertion is an unrecorded remark she claims was made by defendant's counsel at a status conference. Similarly, defendant contends in its reply memorandum of law that it did regularly report overdue debts to credit agencies, but has submitted no evidence to support this assertion. Thus, neither side has presented a sufficient evidentiary basis on which to grant judgment as a matter of law. Moreover, any evidence on point that might have been presented, because not part of the pleadings, could not have properly been considered in deciding a motion brought pursuant to Rule 12(c) without converting the motion to one for summary judgment.

In short, whether the statements in the July Notice suggested that defendant was going to take an action it never actually intended to take raises a question of fact that can not be resolved at this stage of the litigation. Accordingly, the parties' cross-motions for judgment on the pleadings with respect to this aspect of plaintiff's claims are denied.

*iv.) Contradictory Letter*

FDCPA Section 1692g(a) requires debt collectors to provide consumers with a validation notice including the following information, with the language relevant here emphasized:

> (a) Notice of debt; contents
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
> **(1)** the amount of the debt;
> **(2)** the name of the creditor to whom the debt is owed;
> **(3)** *a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector*;
> **(4)** a statement that if the consumer notifies the debt collector in writing within

12

the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C.A. § 1692g (emphasis added).[2]

Even when a debt collector provides all of the validation information required by Section 1692g(a), it may still violate the FDCPA if it also makes statements that "overshadow or contradict" that information. *Russell,* 74 F.3d at 34. A plaintiff need not prove, however, that the communication or representation was threatening. *Id.* at 35. Rather, the Second Circuit has stated:

> A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights.

*Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 309 (2d Cir. 2003), *quoting Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998). Other courts have similarly stated that a claim brought under Section 1692g must plead "a contradiction between the demand language

---

[2]I note that 1692g has since been amended, but in a way that does not affect the resolution of this case. Specifically, subsection (b) has been amended to add the following sentences:

> "Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

120 Stat 1966, *2006-07.

and the validation language" that "would mislead the least sophisticated consumer into disregarding his or her rights under the validation notice." *Harrison v. NBD*, 968 F. Supp. 837, 846 (E.D.N.Y. 1997), *citing Beeman v. Lacy, Katzen, Ryen, & Mittleman,* 892 F. Supp. 405, 412 (N.D.N.Y. 1995).

In *Russell,* the notice at issue stated that, by making payment within ten days, the consumer could avoid having her debt "posted" to her "file" – a threat that even counsel for the debt collector could not explain when questioned about it by the court. *Russell*, 74 F.3d at 34-35. Although the reverse side of the notice contained the language required by Section 1692g(a), the Second Circuit found that the notice violated the FDCPA because the least sophisticated consumer would be confused about whether she truly had 30 days to dispute the debt or only 10 days to decide whether to pay it. *Id.* at 34. Similarly, in *Savino*, a notice that called for "immediate payment" on the front, although it contained the required validation notice on the back, was found to be contradictory and therefore in violation of FDCPA Section 1692g. *Savino*, 164 F.3d at 85-86.

Here, plaintiff Jackson argues that defendant, by mailing the July Notice demanding that her debt "be paid in full now" only 31 days after the June Notice, contradicted plaintiff's right to dispute the validity of the asserted debt within 30 days. Plaintiff points out that the July Notice assumes the debt to be valid because defendant received no communication from plaintiff disputing the debt within 30 days of the June Notice. As plaintiff points out, if she *had* mailed a timely letter to defendant disputing the debt or seeking additional information about it, defendant would likely not have received her letter before it sent out the July Notice. *See Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (debtor has a "full thirty days" after receipt of

debt collection notice to send notification that he disputes the debt).

Plaintiff fails to plead a violation. The June Notice contained the validation information required by Section 1692g(a), and no other statement in that notice contradicted or overshadowed that information. By the time defendant mailed the July Notice, plaintiff's time to dispute the debt or request additional information had expired. Thus, the July Notice could not have left plaintiff uncertain of her rights or led her to disregard them during the relevant period.

Plaintiff seems to argue that the timing of the July Notice could be confusing because it might lead the least sophisticated consumer–even if she had disputed the debt within the 30 days provided–to believe that her dispute letter was not received or was ineffective, and that, in any event, she now had an immediate obligation to make payment. This argument fails for the following reasons. Even the least sophisticated consumer can reasonably be expected to recall whether she sent a letter disputing a debt within the time permitted, and to comprehend the possibility that her letter disputing the debt and the debt collector's second notice might have crossed in the mail. *See Greco*, 412 F.3d at 363. Indeed, the July Notice reiterates without qualification a debtor's right to dispute a debt within 30 days of the original collection notice. Finally, even if plaintiff had mailed a letter disputing the debt in issue within 30 days of the June Notice, and defendant sent the July Notice out before receiving plaintiff's letter, there is no reason to believe that defendant would not have treated plaintiff's letter properly and ceased collection efforts. *See* Section 1692g(b).

For all these reasons, I conclude that the plaintiff's allegations do not demonstrate any contradiction between any reasonable interpretation of the wording of the June and July Notices and the required validation notice. Accordingly, defendant's motion with respect to plaintiff's

claim under Section 1692g is granted.

## CONCLUSION

As stated above, plaintiff's claims with regard to the "Colorado State Residents Only" language and the timing of the mailing of the July Notice are hereby dismissed. The parties' cross-motions for judgment on the pleadings with respect to the language in the July Notice threatening that, unless paid immediately, plaintiff's account would appear as a bad debt in defendant's files, are both denied.

**SO ORDERED.**

_____**/s/**_____
**Steven M. Gold**
**United States Magistrate Judge**

November 28, 2006
Brooklyn, New York

*U:\JB 2006-2007\Jackson112806.wpd*